## Rose, et al. v. Briggs, et al.

(Decided November 18, 1924.)

### Appeal from Clark Circuit Court.

1. Religious Societies—To Deprive Congregation of Control of Property, there Must be Constitution Conferring on State or National Body More than Power to Make Advisory Decisions.—In order to deprive local congregation of control of its own church property, which it built with its own means, there must be either

written constitution or clearly shown parol constitution confer-
ring on state or national body more than power to make advisory
decisions.

2.   Religious Societies—That One Faction Subordinate to State Body
did Not Defeat Right of Each to Use Building.—Where church
had no constitution and had given state body no more thàn ad-
visory powers, the fact that one faction was in subordination to
such body did not take case out of Ky. Stats., section 322, re-
quiring that each faction be permitted to use church for divine
worship part of time.

HAYS & HAYS for appellants.

BENTON & DAVIS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

L. C. Rose, etc., brought this action as trustees
and members of the local congregation of the Church of
the Living God at Winchester, Kentucky, against the de-
fendants, charging that they had closed and locked up the
church and refused to allow it to be opened for services.

A preliminay injunction was granted after a hearing
in open court, by which the plaintiffs and defendants
were each allowed to use the church one-half the time. On
final hearing the circuit court dissolved the injunction
and dismissed plaintiffs' petition. The plaintiffs appeal.

The Church of the Living God is a religious organi-
zation originating about the year 1880 at Anderson, Indi-
ana. There is no form of government. The Bible is its
creed. It maintains that the Christian church is purely a
spiritual organization. The congregation has no list of
members; no roll of members is kept; it has no clerk or
record of any kind and as we understand it is wholly
without officers. The congregation calls a pastor. Any
one who worships with them and gives satisfactory testi-
mony is recognized as a member of the congregation. The
congregation at Winchester is composed of about ninety
members. The difficulty here arose as usual over the
question of a pastor. Rev. S. W. Joiner was the pastor
of the church, elected by the congregation, when about
sixty of the congregation signed a petition requesting
Rev. A. C. Rose to become the pastor. This petition was
read to the congregation Sunday morning; that evening
Rose preached in the church and on the following Monday
morning Joiner and his friends locked it up. After this

had occurred there was a meeting at Winchester of the presbytery, or of the ministers in the state belonging to the church. They sustained Joiner and rejected Rose as a member of the church until such time as he should bring forth fruit worthy of the amendment of life. This action was apparently the basis of the judgment of the circuit court. Section 322, Kentucky Statutes, provides:

> "In case a schism or division shall take place in a society, the trustees shall permit each party to use the church and appurtenances for divine worship a part of the time, proportioned to the members of each party. The excommunication of one party by the other shall not impair such right, except it be done *bona fide,* on the grounds of immorality."

There was here no charge of immorality, but it is earnestly insisted that in case of a division in a church the proprietary right is in the party which maintains the true position of subordination with the authoritative action of the church. First Presbyterian Church v. Wilson, 14 Bush 252; Bogard v. Boone, 200 Ky. 572. But in all the cases in which this court has applied this rule the church had a well defined constitution by which different church bodies were created and their powers defined. The Church of the Living God has no rules or constitution creating what is called the state presbytery or the general presbytery. There is nothing defining the powers of either of these bodies. There is no evidence whatever that the local congregation at Winchester has in any way conferred upon either of these bodies any power over it except in an advisory capacity. The general presbytery is composed of all the ministers of the church, meeting annually at Anderson, Indiana. The state presbytery is composed of all the ministers of the state, meeting annually at Winchester, where a camp meeting is held. But there is nothing in the record conferring upon either of these bodies anything more than advisory action. In order to deprive the local congregation of the control of its own church property, which it built with its own means, there must be either a written constitution or a clearly shown parol constitution conferring more than a power to make advisory decisions. To take out of the statute all cases on such meagre evidence as we have here would be in fact to emasculate it. It is very common in all congregational bodies to create associations with advisory powers. The power to do more than this—that is,

the power to enforce obedience to the advice—must be clearly shown. The organization of the general church seems to be entirely along the same lines as the organization of the local congregation; that is, it is purely a spiritual matter. The physical organization which is necessary to take the case out of the statute is entirely out of keeping with the fundamental conception of the church, as shown by the evidence. Cox. v. Prewitt, 197 Ky. 716.

In the Baptist church there are associations. In the Disciples or Christian church there are conferences. But none of these take anything more than advisory action. This congregation came mainly from these churches and there is nothing in the record indicating that it has surrendered in any way any of its independence.

Judgment reversed and cause remanded with directions to enter a judgment continuing in force the preliminary injunction above referred to.