## Jordan et al. v. City of Olive Hill et al.

April 21, 1942.

Rehearing Denied June 16, 1942.

Jesse K. Lewis for appellant.

R. T. Kennard, H. L. Woods, and Browning, Ziegler & Cochran for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In 1926 and 1927, the City of Olive Hill ordered its streets to be paved with concrete at the expense of abutting property. Suit was filed by the city against M. D. Jordan and wife in April, 1936, seeking to enforce assessment liens on five parcels located on Main, Scott and Railroad Streets. It is alleged that there had been assessed against all the property $7,075.14, of which $2,314.82 had been paid. Judgment was prayed for the balance of $4,760.32, with interest from December 31, 1933, and 10% penalty on the principal, the amount of which was not disclosed. A year or so later the defendants filed answer traversing the material allegations of the petition. As the basis of their plea of limitations under the five-year statute (Section 2515) they alleged:

"For further answer herein, defendants state that they have not made any payments whatever on said street paving assessment since January 22, 1929, and they state that the only sums paid on said assessment or any interest thereon was the sum of $——— paid on the principal and the sum of $——— interest which sums were paid on said date of January 22, 1929, as shown by the Olive Hill Street Improvement Record Book on file in the office of the city clerk of the City of Olive Hill. They say it is untrue that the unpaid balance on said assessment with interest thereon is due from the 31st day of December, 1933, as set out in plaintiff's petition or any other date, and they further state that at no time after the completion of said paving did they or either of them in writing, as required by law, request said plaintiff City for the privilege of paying for said paving in annual installments."

In reply to those allegations, the city says:

"It is not true that the defendant has not made any payments on said street paving, since January 22nd, 1929, or that the only sums paid on said assessment

or any interest thereon was the sum of $———— paid on the principal, and the sum of $———— interest, which sums were paid on Jan. 22nd, 1929, and it is not true that at no time after the completion of said paving did defendants, in writing, as required by law, request the plaintiff City for the privilege of paying for said paving in annual installments."

The appellants insist that the court erred in denying their plea of limitations. No evidence was introduced concerning the assessments or payments thereof. The appellants maintain they were not required to present proof to sustain their plea inasmuch as it stood admitted, claiming that the responsive pleading, being a negative pregnant, is no denial. White v. City of Williamsburg, 213 Ky. 90, 280 S. W. 486. See, also, Ison v. Ison, 272 Ky. 836, 115 S. W. (2d) 330. It is not supposed that either of these gladiators, who gave no quarter and asked none, and who did not hesitate to deny everything else the other said, would have intentionally evaded a traverse or have purposely affirmed the other's pleading by a double negative. Modern practice disregards technicalities in pleadings which mean nothing. The allegation being negative in form, its denial in the same form is deemed sufficient. Moreover, it is to be observed the defendants pleaded affirmatively that the only sums they had paid on the assessments were paid on January 22, 1929, and this was denied. We think it was incumbent upon the defendants to produce evidence to sustain their plea of limitations, and having failed, that the court properly denied it.

An amended petition was filed and judgment rendered in 1939, but these were subsequently vacated and need not be referred to.

But in April, 1940, a material amendment to the petition was filed. It is recited as being "to conform to the proof as shown by the report of special auditor, Henry Carroll, filed in this case." It sets up what it calls the true descriptions of four tracts upon which the liens were then sought to be enforced. The Scott Street lot is omitted; otherwise the descriptions are the same as in the petition. It further alleges the sum due from each tract with interest from December 1, 1939. Issues were joined as to the accuracy of the descriptions and the amounts due from each tract. In its reply the plaintiff admitted that its descriptions were not correct and

called upon the defendants to furnish better descriptions. Thereafter an intervening petition was filed by certain individuals who stated they owned $21,500 of bonds secured by liens upon property abutting Main Street, including that of the defendant. They adopted the allegations of the petition as amended, generally and specifically, and particularly pleaded laches and estoppel. Two days later, June 14, 1940, judgment was rendered adjudicating liens on Tracts Nos. 1, 2 and 3 as claimed in the amended petition, and directed their sale. While the intervening petition had not been replied to by the defendants, the response not being due, the material allegations of the city in relation to the same property stood denied and the descriptions admitted to be incorrect. No evidence had been taken on any of those issues. It is apparent that this judgment is erroneous.

The chief conflict on the appeal relates to what is designated as Tract No. 4 (the defendants' home place and farm) which is on the south side of Main Street and alleged to run with it 724.5 feet. In the second paragraph of the answer to the petition as amended, the defendants filed deeds to this property and a plat showing its boundary and also the city limits in relation thereto. The defendants alleged that only such part of their property as is thus shown to be within the city limits was subject to the assessment for street paving. They further pleaded that their property was divided into six lots, and that each should be considered as a unit for the assessment of the street built in front of it. They prayed that there should be a proper apportionment for street paving against what they designate as Lots Nos. 1, 2 and 3 of this Tract No. 4, and that the rest of their property be relieved of assessments. The aggregate boundary of these lots on the street is 269 feet. The defendants alleged that Lots 4, 5 and 6 are outside the city and not subject to assessment. A reply to this amended answer joined issue and pleaded estoppel to claim a separation of the property into lots and to deny the acceptance of the 10-year payment plan of the entire assessments. The reply also alleged that all the tract was in the city and set out a new description with calls of metes and bounds other than along Main Street, as to which it says: "Thence an easterly and northerly course with the south line of Main Street, 724.5 feet." A rejoinder denied the tract was properly described or was all within the city limits.

The evidence established that the defendants acquired this property, consisting of about 100 acres, in the year 1896. Seven or eight years later they built fences dividing the land around their residence into several lots or small fields of irregular size and shape, but all during the years these have been treated and used as part of the farm appurtenant to the dwelling house. One is the yard, another the garden, and another a pond lot. They appear to be nothing more than the curtilage—using the term in its broader meaning. Childers v. Commonwealth, 198 Ky. 848, 250 S. W. 106. The defendant, Jordan, did testify that he regarded them as distinct lots and had entertained the idea that some day he would convey them as thus separated among his several children. There had been no separation in the listing for taxes. All the facts and circumstances in respect to their use and relation, one to the other and to the entire property, showed them to be a unit for purposes of the street assessments. Davis & Co. v. McDonald, 200 Ky. 828, 255 S. W. 833; Vaughn v. City of Williamsburg, 245 Ky. 339, 55 S. W. (2d) 690; Peters v. City of Morehead, 266 Ky. 99, 98 S. W. (2d) 41.

It appears that sometime shortly before 1920 the city limits were extended southwesterly along what is now U. S. Highway No. 60 and Main Street to take in the defendants' residence and substantially all of the several lots above referred to. Later several acres of the western part of defendants' farm were also taken into the city, apparently to secure licenses from tent shows usually located there, but that part does not abut on the street. The city line runs with the defendants' fence northwestwardly along the street or highway for something like 450 feet and then leaves the street and runs almost due west and on around the defendants' dwelling and the curtilage. The petition as amended sought to subject the entire 100 acres of land to the cost of 724 feet of paving. The judgment, however, subjects as a whole that part of the curtilage found to be within the city limits and also what seems to be a very narrow strip alongside the street. It is not clearly defined for it merely calls for the line of Main Street without locating it. The record does not disclose the source of the courses it recites or of the description of this strip. The plat shows a slight variation of the defendants' lines from the city boundary along here, but the surveyor who ran and defined both lines testified that the city boundary

runs with the defendants' property line which, as we understand, is that of the street. It, therefore, appears that the judgment charges the defendants' property with the cost of paving 724 feet, whereas only about 270 feet of the property lying within the city abuts the street. To describe the situation another way: For about 454 feet the city boundary is the south side of the street and the abutting property of the defendant is outside the city limits.

The provisions of Section 3563 of the Statutes authorizing a city of the Fourth class to improve its streets "at the exclusive cost of the owners of real estate abutting on such improvement, to be apportioned among and assessed upon the lots or parcels of real estate abutting," and declaring the assessment of the cost to be a lien upon such lots or parcels do not authorize the assessment of property outside the city for the cost of improving a street on which it abuts. City of Ashland v. Meade, 189 Ky. 100, 224 S. W. 642. We are of opinion that the defendants' property is not chargeable with the cost of this 454 feet of paving.

Both the judgments of June 14, 1940, and of March 3, 1941, are reversed. The record is in such condition this court cannot determine what judgment should be directed, unless it would be to dismiss the petitions. But it is conceded the appellants' property is subject to liens for its correctly proportionate part of the paving costs. Therefore the case is remanded for consistent proceedings.